UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
BRIAN W. HENRY,

                    Plaintiff,

v.

ROBERT BRZESKI, sued individually and in his
Capacity as a Detective of the Nassau County Police
Department; MATTHEW ROSS, sued individually
and in his capacity as a Detective of the Nassau
County Police Department; MICHAEL MULLEN,
sued individually and in his capacity as a Police
Officer of the Bureau of the Special Operations of
the Nassau County Police Department; RAFAEL
MORALES, sued individually and in his capacity as
a Police Officer of the Bureau of Special Operations
of the Nassau County Police Department; CHRIS
STEIN, sued individually and in his capacity as a
Police Officer of the Bureau of Special Operations,

                    Defendants.
----------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

21-CV-05682 (JMA) (LGD)

**LEE G. DUNST**, Magistrate Judge:

    *Pro Se* Plaintiff Brian W. Henry commenced this action on October 21, 2021. Electronic Case File Number ("ECF No.") 1. Pursuant to 42 U.S.C. § 1983 ("Section 1983"), Plaintiff alleges various violations of his constitutional rights by Nassau County Police Officers Robert Brzeski, Michael Mullen, Matthew Ross, Rafael Morales, and Chris Stein (collectively "Defendants"). On June 6, 2022, Defendants filed a motion for judgment on the pleadings, together with Plaintiff's opposition and Defendants' reply. ECF No. 26-27. On October 20, 2022, District Judge Joan M. Azrack referred the motion to the undersigned for a Report and Recommendation. October 20, 2022 Order. As discussed herein, the Court recommends Judge Azrack GRANT the motion for judgment on the pleadings and DISMISS this case WITH PREJUDICE.

I.     **FACTUAL BACKGROUND**

    A.     **Allegations in the Complaint**

This case arises from a robbery that occurred on December 13, 2010, and a homicide that occurred two days later on December 15, 2010.  ECF No. 1 ¶ 11.  The robbery took place at a tattoo parlor in Westbury, New York, during which money, cellular phones, and other items were stolen.  *Id.* ¶ 26.  On December 15, 2010, an individual named James McClenic was fatally shot in Hempstead, New York.  *Id.* ¶ 27.  According to various witnesses, masked gunmen and a black Hyundai Sonata were seen at the scenes of both crimes.  *Id.* ¶ 28.

On December 20, 2010, Plaintiff was in a black Hyundai Sonata that was pulled over by Defendant Mullen (and his then-partner, Detective Andrew Carbone) in Roosevelt, New York.  *Id.* ¶¶ 11, 29.  The officers searched Plaintiff and another passenger, Gary Moseley, and found marijuana in Mr. Moseley's possession.  *Id.* ¶ 13.  The officers arrested both Plaintiff and Moseley for marijuana possession.  *Id.*  The officers also searched the vehicle and purportedly found several cellular phones (of which, Plaintiff identified two of them).  *Id.* ¶ 31.  On December 21, 2010, Plaintiff was arraigned on the marijuana possession charge, appointed counsel, and released after posting bail.  *Id.* ¶¶ 14, 31-32.

On December 22, 2010, at around 9:30 p.m., Plaintiff noticed police officers inspecting a car he that previously drove and was now parked outside a residence in Roosevelt, New York.  *Id.* ¶ 15.  Plaintiff called his mother and asked her to come to his assistance.  *Id.* ¶ 15.  The officers allegedly demanded Plaintiff and the occupants of the vehicle provide identification and proceeded to search them.  *Id.* ¶ 16.  Plaintiff alleges that the officers arrested another occupant of the vehicle and then directed Plaintiff to drive away.  *Id.* ¶ 18.

After he drove away, Plaintiff alleges that Defendant Officers Morales and Stein[1] followed his vehicle and then pulled him over (although he purportedly obeyed all traffic laws), arrested him, and transported him to the police precinct located in Baldwin, New York.[2]  *Id.* ¶¶ 18, 41.  During the course of the stop of Plaintiff's vehicle, Defendant Muller heard Plaintiff's name over the radio waves and then informed Defendant Stein that Plaintiff was a suspect in the McClenic murder.  *Id.* ¶ 59.

Once he was transported to the precinct, Plaintiff purportedly invoked his right to remain silent and right to counsel.  *Id.* ¶ 18.  He then was placed in a small room, handcuffed to a desk, and held there for approximately seven hours until Defendant Officers Brzeski and Ross arrived in the morning.[3]  *Id.* ¶ 19.  Plaintiff again invoked his right to counsel and asked to speak to his mother.  *Id.* ¶ 20.  However, Defendants Brzeski and Ross allegedly interrogated him for the next thirteen hours about the robbery and murder, and he ultimately made inculpatory statements about his participation in both incidents.  *Id.* ¶¶ 20-21.  Plaintiff alleges he was not provided food, drinks, or the opportunity to use the restroom, and claims he was subject to various

---

[1] Plaintiff alleges Defendants Morales and Stein were debriefed on his arrest for possession of marijuana and the unclaimed cellular phones recovered from the vehicle prior to going out on their tour of duty on December 22, 2010.  ECF No. 1 ¶ 33.

[2] Plaintiff's Complaint includes a video purportedly recorded by Defendant's sister on the evening of December 22, 2010, after he called his mother asking for help.  ECF No. 1-1; ECF No. 1-2.  The recording includes a conversation among Defendants Morales and Stein and Plaintiff's mother, sister, and niece during the stop.  ECF No. 1-2.  In the video, Plaintiff's mother questions the officers as to why they pulled over the vehicle.  A conversation ensues, during which Defendants Morales allegedly made statements including: "I guess you don't hear the news of all the people getting shot and all the gang bangers running around huh?;" "There is no argument.  I'm doing my job.  It's 2 o'clock in the morning, I'm stopping people to see who's out in the streets.  Ok!;" and "I'm stopping everybody I want to stop."  ECF No. 1 ¶¶ 41-52.

[3] Plaintiff alleges that Morales drafted a motor vehicle citation for an expired inspection, a speeding ticket, and a complaint charging Plaintiff with possession of stolen property.  ECF No. 1 ¶ 65.

3

interrogation tactics, including the officers stating that they had witnesses who swore he was the shooter in the murder of Mr. McClenic. *Id.* ¶¶ 69-70.

Subsequently, Plaintiff was indicted for various state crimes, including robbery and murder. *Id.* ¶ 73. At a May 26, 2011 suppression hearing, the New York State court suppressed all statements made by Plaintiff regarding the robbery, but permitted the admission of statements regarding the homicide. *Id.* ¶ 74. At his state trial in August 2011, Plaintiff was found guilty of murder, criminal possession of a weapon, and misdemeanor possession of marijuana. *Id.* ¶ 22. On April 9, 2011, he was sentenced to an aggregate prison term of twenty years to life. *Id.*

On November 16, 2016, the Appellate Division vacated Plaintiff's state conviction, finding that his right to counsel was violated by the admission of certain statements regarding the homicide that he made to officers while in police custody. *Id.* ¶ 23; ECF No. 12 ¶ 23; *People v. Henry*, 144 A.D.3d 940, 944 (2d Dept. 2016), *rev'd*, 31 N.Y.3d 364 (2018). On June 12, 2018, the New York Court of Appeals reversed and remanded the case for further proceedings.[4] *People v. Bryan Henry*, 31 N.Y.3d 364 (2018).

The Court of Appeals decision provides an overview of the circumstances relating to the state criminal charges against Plaintiff:

> In December 2010, two masked men robbed the occupants of a tattoo parlor at gunpoint, taking a BlackBerry cell phone from one victim. Surveillance footage showed a black Hyundai Sonata with tinted windows present in the parking lot behind the parlor. Two days later, a masked gunman shot and killed a 19-year-old man who was sitting in a parked car at a gas station convenience store where his friend had gone to make a purchase. An eyewitness reported that the shooter arrived in a black Hyundai Sonata with tinted windows and sped away in it afterwards. Five days after the shooting, Mr. Henry—driving a black Hyundai

---

[4] The Court of Appeals found that the Second Department's decision misapplied the Criminal Procedure Law and binding precedent regarding the suppression of a defendant's statements. Consequently, the Court of Appeals remitted the case to the Appellate Division for a "consideration of the facts . . . and issues raised but not determined on appeal to that court." *Id.* at 371.

>Sonata with tinted windows—sped away when a police car passed by, running two stop signs at 40 m.p.h. before being pulled over. One police officer approaching the car smelled marijuana, and then saw loose marijuana on Mr. Henry's lap. The officers arrested Mr. Henry, and one officer drove the Sonata to the precinct, where it was impounded after a search. Mr. Henry was charged with criminal possession of marijuana, and an attorney was assigned to represent him on that charge. He was subsequently arraigned and released on bail. When arresting Mr. Henry, the police observed several cell phones on the floor of the car; Mr. Henry disclaimed ownership of one of them, a BlackBerry. Following an inventory search of the Sonata and investigation, the police determined that the BlackBerry was the one stolen from the tattoo parlor owner. Three days after his arrest, Mr. Henry—now driving a different car—was pulled over for speeding; the car's state inspection had also expired. Upon learning that Mr. Henry was wanted for possession of the stolen BlackBerry, the police arrested him and read him his Miranda rights, which he waived. During several hours of questioning about the robbery and the murder, Mr. Henry admitted that he was the driver and identified the passengers, but denied any additional involvement. A grand jury returned an indictment charging Mr. Henry with multiple counts of robbery in the first degree, criminal possession of a weapon in the second degree, criminal possession of stolen property in the fifth degree, murder in the second degree, and criminal possession of marijuana in the fifth degree.

*People v. Bryan Henry*, 31 N.Y.3d 364 (2018).

On March 16, 2017, Plaintiff was charged in a superseding information in the Eastern District of New York with murder in aid of racketeering activity for the McClenic murder. ECF No. 1 ¶¶ 89-90; ECF No 12-9 (*United States of America v. Bryan Henry*, 14-CR-00264 (JS) (ARL)). That same day, Plaintiff pled guilty to the superseding information and proceeded to cooperate with federal prosecutors to secure the conviction of Eric Smith, who also participated in the McClenic murder. *Id.* ¶¶ 89-100; ECF No. 12-9; ECF No. 12-15. As part of his cooperation, Plaintiff testified as a government witness at trial against Mr. Smith. ECF Nos. 12-12; 12-13; 12-14. As a result of his federal case, the state charges were dismissed on October 26, 2018. *Id.* ¶ 102. Plaintiff was sentenced to time served by District Judge Joanna Seybert on November 2, 2018. ECF No. 12-16.

Based on these facts, Plaintiff also alleges various violations of Section 1983 by

5

Defendants in connection with his December 22, 2010 arrest and subsequent interrogation, including false arrest (without probable cause), false imprisonment, unlawful interrogation, malicious prosecution with malice, deprivation of his Due Process and Fair Trial rights under the Fifth, Sixth, and Fourteenth Amendments, and other causes of action. *Id.* ¶ 103-160.

### B.     Defendants' Answer

In their Answer to the Complaint, Defendants identify a number of notable facts omitted from Plaintiff's complaint. ECF No. 12.

During Plaintiff's trial testimony in *United States v. Eric Smith*, 14-CR-00264, 15-CR-00428 (JS) (EDNY 2017), he admitted that he was a member of the "Rollin' 60s" (also known as the "Crips"), which was a criminal enterprise based out of Los Angeles, California and Roosevelt, New York. ECF No. 12-14, at 2298-99; ECF No. 26-4 at 2. During his guilty plea on March 16, 2017 and his testimony at the May 2017 trial of Eric Smith, Plaintiff also admitted that he participated in the murder of Mr. McClenic (who was a rival member of the "Bloods"), as well as various other crimes (including the robbery at the tattoo parlor in December 2010). ECF No. 12-14, at 2314; ECF No. 12-14, at 2325; ECF No. 12-13, at 2388; ECF No. 12-13, at 2409; ECF No. 12-15 at 15-16.

In connection with his cooperation with federal prosecutors, Plaintiff signed a "[C]onditions of [V]acatur" on October 25, 2018. ECF No. 12-8. According to this document, Plaintiff "waive[d] [his] right to raise any further legal claims regarding all stages of [the] prosecution," "waive any claim that [his] arrest was not based on probable cause," and "waive [hi]s right to bring civil charges or any kind of civil lawsuit against . . . Nassau County, the Nassau County Police Department . . . or *any employee of the Nassau County Police Department* . . . ." *Id.* (emphasis added). In return for his cooperation with federal prosecutors, the Nassau

6

County District Attorney's Office consented to the vacatur of his state convictions (under Indictment No. 184/2011) and the state case was dismissed the following day on October 26, 2018. *Id.*; ECF No. 1-5.

## II.     LEGAL STANDARDS

### A.     Fed. R. Civ. P. 12(c) Motion for Judgment on the Pleadings

Presently before the Court is Defendants' motion for judgment on the pleadings. The Second Circuit has explained:

> "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (cleaned up). "To survive a Rule 12(c) motion, [the plaintiff's] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hayden* [*v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010)] (cleaned up). "The assessment of whether a complaint's factual allegations plausibly give rise to an entitlement to relief . . . calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal conduct." *Lynch*, 952 F.3d at 75 (internal quotation marks omitted). In making this assessment, we "draw all reasonable inferences in [the plaintiff's] favor." *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009).
> Like a motion under Rule 12(b)(6), a motion under Rule 12(c) may be filed before discovery is complete. *See* Fed. R. Civ. P. 12(c) (permitting motion "[a]fter the pleadings are closed—but early enough not to delay trial"). Until both parties have an opportunity to test their evidence at summary judgment or trial, we must accept the non-movant's pleading as true and decline to weigh competing allegations asserted by the moving party.

*Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021).

In considering a motion for judgment on the pleadings, "a court may consider the pleadings and exhibits attached thereto, and statements or documents incorporated by reference in the pleadings." *Jones v. Dep't of Educ.*, No. 05-CV-3075 DLI/MDG, 2007 WL 2713343, at *3 (E.D.N.Y. Sept. 13, 2007) (internal citations omitted).

### B.     *Pro Se* Plaintiff

Given that Mr. Henry is proceeding *pro se*, the Court is "mindful that a *pro se* party's

7

pleadings must be 'liberally construed' in favor of that party and are held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  The Second Circuit "liberally construe[s] pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (internal quotation marks and citations omitted).

C. **Judicial Notice**

Defendants ask the Court to take judicial notice of various public records in this case.  As various courts have explained, judicial notice of previous court records, guilty pleas, and accurate documentation may be appropriate under certain circumstances:

> A court may take judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2); *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70–71 (2d Cir. 1998).  "Judicial notice may be taken of public records, including 'arraignments, arrest reports, criminal complaints and indictments, and certificates of disposition.'" *Burris v. Nassau Cnty. Dist. Att'y*, No. 14-CV-5540, 2017 WL 9485714, at *3 (E.D.N.Y. Jan. 12, 2017) (quoting *Harris v. Nassau County*, No. 13-CV-4728, 2016 WL 3023265, at *3 (E.D.N.Y. May 23, 2016) (collecting cases)), *report and recommendation adopted*, 2017 WL 1187709 (E.D.N.Y. Mar. 29, 2017); *see also, e.g., Bristol v. Nassau County*, 685 F. App'x 26, 28 (2d Cir. 2017) (taking judicial notice of decisions in related state criminal proceedings); *Schwartz v. Capital Liquidators, Inc.*, 984 F.2d 53, 54 (2d Cir. 1993) (per curiam) (taking judicial notice of the plaintiff's criminal conviction); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts . . . to establish the fact of such litigation and related filings.").  **In addition, courts routinely take judicial notice of guilty pleas in section 1983 cases at the motion to dismiss stage**. *See, e.g., Livingston v. Henderson*, No. 15-CV-631, 2019 WL 1427689, at *5 & n.8 (N.D.N.Y. Mar. 29, 2019) (taking judicial notice of "Certificate of Conviction/Disposition" on grounds that "[t]he state prosecution of an individual is a matter of public record"); *Johnson v. Pugh*, No. 11-CV-385, 2013 WL 3013661, at *2 (E.D.N.Y. June 18, 2013) (finding it "proper to take judicial notice of plaintiff's guilty plea, conviction, and sentencing as a matter of public record without converting defendant's motion to one for summary judgment"); *Rios v. Third Precinct Bay Shore*, No. 08-CV-4641, 2009 WL 2601303, at *1 & n.2

8

(E.D.N.Y. Aug. 20, 2009) (taking judicial notice of conviction by guilty plea in section 1983 case).

*Smith v. Rossini*, No. 19-CV-323 (MKB), 2020 WL 9816016, at *2 n.4 (E.D.N.Y. Nov. 30, 2020) (emphasis added).

Accordingly, the Court takes judicial notice of the underlying state and federal criminal cases involving Plaintiff, including the Conditions of Vacatur, the state court decisions concerning Plaintiff's state criminal case, Plaintiff's guilty plea before Judge Seybert, and Plaintiff's testimony in *United States v. Eric Smith*. *See* ECF Nos. 12-8, 12-9, 12-10, 12-11, 12-12, 12-13, 12-14, 12-15, 12-16, 12-17.

### III. DISCUSSION

Defendants assert numerous arguments in support of dismissal based on affirmative defenses stated in their Answer (ECF No. 12), including waiver, mutual release, and equitable estoppel, a lack of subject matter jurisdiction, res judicata, and collateral estoppel. The Court finds the waiver based on the Conditions of Vacatur and Plaintiff's federal guilty plea to be the most compelling arguments. In response, Plaintiff argues, *inter alia*, his federal guilty plea is not dispositive, because the state court decision was purportedly vacated in his favor and argues his Conditions of Vacatur did not bar his right to sue. The Court disagrees and finds that Plaintiff's Conditions of Vacatur and guilty plea are fatal for his claims in this case.

#### A. Plaintiff's Conditions of Vacatur Waived His Right to Bring This Action

The Court finds that the Conditions of Vacatur (ECF No. 12-8) bars Plaintiff from pursuing the claims in this case, as it was properly executed and did not violate Plaintiff's constitutional rights.

A waiver of the right to sue under Section 1983 is governed by federal law. *See Valdiviezo v. Greer*, No. 14-CV-4897 (KAM), 2018 WL 4863584, at *6 (E.D.N.Y. Oct. 4, 2018),

9

*aff'd*, 787 F. App'x 48 (2d Cir. 2019) (citing *Town of Newton v. Rumery*, 480 U.S. 386, 392 (1987)).  The United States Supreme Court in *Town of Newton v. Rumery* held that an agreement not to sue prosecutors in return for a dismissal of criminal charges may be enforceable when "respondent voluntarily enter[ed] into the agreement, [and] the prosecutor had a legitimate reason to make this agreement that was directly related to his prosecutorial responsibilities and was independent of his discretion as to bringing criminal charges."  480 U.S. at 392.  Additionally, in considering a release of claims, the Second Circuit has noted that a "court may ascertain whether a party knowingly and voluntarily waived his rights only 'after a careful evaluation of the totality of all surrounding circumstances.'"  *Valdiviezo*, 2018 WL 4863584, at *6 (citing *Warner v. Orange Cty. Dep't of Prob.*, 968 F. Supp. 917, 923 (S.D.N.Y. 1997), *aff'd*, 173 F.3d 120 (2d Cir. 1999)).  Such a "fact-intensive inquiry" should consider:

> 1) the plaintiff's education and business experience, 2) the amount of time the plaintiff had possession of or access to the agreement before signing it, 3) the role of plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was represented by or consulted with an attorney, and 6) whether the consideration given in exchange for the waiver exceeds [ ] benefits to which the [the plaintiff] was already entitled by contract or law.

*Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437–38 (2d Cir. 1998) (internal quotations and citations omitted).

Analyzing the circumstances outlined in the pleadings, the Court finds that the Conditions of Vacatur was entered knowingly by Plaintiff, and he was represented by counsel at that time.  ECF No. 12-8.  In fact, Plaintiff's criminal defense counsel (who also was his attorney in the federal case) signed the Conditions of Vacatur.  ECF No. 12-8; ECF No. 12-11.  Further, Plaintiff offers no clear basis to question the circumstances surrounding his execution of the document, the clarity of the agreement, the adequacy of legal representation in signing it, or the consideration in exchange for signing.  *See* ECF No. 26-5 at 28-30.  In fact, the Conditions of

Vacatur states:

> I sign this agreement after full consultation with my attorney, [sic] I understand the terms as set forth herein, and I am not under the influence of any substance that would preclude me from understanding the nature of this agreement. I enter this agreement knowingly, intelligently, and voluntarily, and I have not been coerced, threatened, or made any other promises other than that explained in this document and in the plea agreement that I entered with the United States Attorney's Office.

ECF No. 12-8 at 2.

Additionally, Plaintiff entered into a cooperation agreement with federal prosecutors. The U.S. Attorney's Office for the Eastern District of New York agreed that as a result of his cooperation, no further criminal charges would be brought against him for "the December 15, 2010 murder of James McClenic, as charged in the Information," "the December 13, 2010 armed robbery of a tattoo parlor in Westbury, New York," and various other crimes. ECF No. 12-12 at 4. Notably, the agreement provides that it "does not bind any [other] federal, state, or local prosecuting authority." *Id.* at 4.

On March 16, 2017, Plaintiff entered a guilty plea before Judge Seybert. ECF No. 12-15. Plaintiff's attorney agreed that his federal plea concerned the same underlying murder of Mr. McClenic as in the state case. *Id.* at 6-7. Further, the Assistant U.S. Attorney explained to Judge Seybert that the underlying state case was "still pending," that she had "been touch with the Nassau DA's Office," and "[t]hey know that Mr. Henry is here." *Id.* at 20-21.

Plaintiff, however, now argues that the Conditions of Vacatur would violate his purported double jeopardy rights, claiming that he cannot be "forced to waive"[5] his double jeopardy rights and, therefore, suggests the vacatur was invalid. ECF No. 26-5, at 28-30. In light of Plaintiff's *pro se* status, the Court also has considered whether double jeopardy would bar the state re-trial

---

[5] In support of his argument, Plaintiff cites to *Benton v. Maryland*, 395 U.S. 794, 787 (1969), the facts of which appear inapposite to the circumstances at issue.

11

and, if so, whether there would not be adequate consideration for the agreement. However, the Court is not persuaded by either argument. First, the Conditions of Vacatur explicitly states that the state case was being dismissed *as a result of* his cooperation with federal prosecutors, not based on double jeopardy grounds. ECF No. 12-8 ("In light of my cooperation in the federal prosecution of Eric Smith and my plea of guilty to Murder in Aid of Racketeering in Federal Court for my role in the murder of James McClenic, Jr., the Nassau County District Attorney's Office has consented to vacatur of my convictions under Ind. No. 184/2011, pursuant to C.P.L. § 440.10(1)(g)."). Second, the Conditions of Vacatur ended the state case with a dismissal of the criminal charges, and it did not "waive" his double jeopardy rights. Third, Plaintiff entered into the agreement voluntarily, and he was not "forced" to waive his rights. ECF No. 12-8; ECF No. 12-15 at 14. In any event, it does not appear that a continued state prosecution (following the Court of Appeals' reversal) would have been barred on double jeopardy grounds. Plaintiff pled guilty to a federal charge (a violent crime in aid of racketeering) that is not the "same crime" as state murder in the second degree for purposes of double jeopardy under C.P.L. § 40.20. *Polito v. Walsh*, 32 A.D.3d 953, 954 (2d Dept. 2006), *aff'd*, 8 N.Y.3d 683 (2007).

The Court finds the Conditions of Vacatur bars the claims in the Complaint[6], which are

---

[6] Courts in this District have found general releases valid and a full bar on civil claims:

> Given the foregoing facts and the absence of contrary evidence, the General Release is valid and enforceable and, as such, precludes the instant action in its entirety. *Cuffee v. City of New York*, No. 15-CV-8916, 2018 WL 1136923, at *6 (S.D.N.Y. Mar. 1, 2018) (internal quotations omitted) (granting summary judgment and enforcing the release "because Plaintiff has neither raised [a] challenge as to the authenticity of his signature on the Release, nor asserted that he signed the agreement under duress or based upon misinformation, no reasonable juror could find that Plaintiff did not . . . voluntarily, knowingly, and willingly release Defendants from any and all liability, claims, or rights of action"); *Staples v. Officer Acolatza*, No. 14-CV-3922, 2016 WL 4533560, at *3 (S.D.N.Y. Mar. 9, 2016) (finding General Release barred recovery where plaintiff did not allege any facts reasonably supporting his lack of knowledge as to the

all brought against employees of the Nassau County Police Department primarily as a result of the December 22, 2010 arrest resulting in Indictment No. 184/2011.

### B.   Plaintiff's Federal Guilty Plea is Fatal to the Claims at Issue

Additionally, Plaintiff's federal guilty plea to murder in aid of racketeering proves fatal to his Section 1983 claims for false arrest, false imprisonment, and malicious prosecution.

Courts look to the law where the action is brought for the elements of false arrest, false imprisonment, and malicious prosecution. "Under New York law, the elements of a false arrest . . . claim are: '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019) (quoting *McGowan v. United States*, 825 F.3d 118, 126 (2d Cir. 2016) (per curiam)). "To avoid liability for a claim of false arrest, an arresting officer may demonstrate that either (1) he had probable cause for the arrest, or (2) he is protected from liability because he has qualified immunity." *Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015) (internal citations omitted); *see also Spagnuolo v. Howell*, 814 F. App'x 614, 616–17 (2d Cir. 2020) ("Probable cause is a complete defense to a constitutional or New York tort claim for false arrest and false imprisonment . . . ."). Under New York law, the elements of a false imprisonment claim are: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not

---

applicability of the release); . . . *Roberts v. Doe 1*, No. 14-CV-9174, 2015 WL 670180, at *5 (S.D.N.Y. Feb. 17, 2015) (enforcing General Release where plaintiff was represented when executing the release and plaintiff's counsel alleged defense counsel misrepresented the scope of the release to plaintiff but failed to submit evidence in the form of an affidavit).

*Valdiviezo v. Greer*, No. 14-CV-4897 (KAM), 2018 WL 4863584, at *8 (E.D.N.Y. Oct. 4, 2018), *aff'd*, 787 F. App'x 48 (2d Cir. 2019).

otherwise privileged." S*inger v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (citing *Broughton v. State*, 37 N.Y.2d 451, 458 (1975)). Further, "[t]he elements of a claim for malicious prosecution in New York are '(1) the initiation or continuation of a criminal proceeding against [the] plaintiff; (2) termination of the proceeding in [the] plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for [the] defendant's actions.'" *Morris v. Silvestre,* 604 F. App'x 22, 24 (2d Cir. 2015).

On March 16, 2017, Plaintiff pled guilty to participating in the McClenic murder and charges of a violent crime in aid of racketeering. ECF No. 12-15. The plea was based on similar facts as his state charges (specifically, Mr. McClenic's homicide) and, therefore, bars his Section 1983 claims. *See McNeill v. City & State*, No. 06-CV-4843, 2006 WL 3050867, at *3 (E.D.N.Y. Oct. 24, 2006) ("'Since a guilty plea is the equivalent of a conviction,' [Plaintiff's] claims under § 1983 must fail.") (quoting *Hernandez v. City of New York*, No. 00-CV-9507, 2004 WL 2624675, at *5 (S.D.N.Y. Nov. 18, 2004)), *aff'd sub nom. McNeill v. City & State of New York*, 242 F. App'x 777 (2d Cir. 2007); *Tretola v. County of Nassau*, 14 F. Supp. 3d 58, 68–69 (E.D.N.Y. 2014) ("[A] guilty plea, even if to a lesser included offense under a charged violation, is fatal to a false arrest claim."). Similarly, the malicious prosecution claims fail, as "the existence of probable cause is . . . a complete defense to a claim of malicious prosecution." *Keith v. City of New York*, 641 F. App'x 63, 67 (2d Cir. 2016) (citations omitted).

### C.     Remaining Arguments

Defendants raise additional arguments in their motions for judgment on the pleadings. Based on the foregoing recommendation that the Court grant the motion based on waiver and Plaintiff's guilty plea, "the Court need not address [D]efendants' other arguments." *Brady v. Top Ships Inc.*, No. 17-CV-4987, 2019 WL 3553999, at *17 (E.D.N.Y. Aug. 5, 2019), *aff'd sub*

14

*nom. Onel v. Top Ships, Inc.*, 806 F. App'x 64 (2d Cir. 2020).

## IV. CONCLUSION

The Court recommends to Judge Azrack that Defendants' motion for judgment on the pleadings be GRANTED and the case be DISMISSED with PREJUDICE against the Defendants.

## V. OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2), the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Judge Azrack. FAILURE TO FILE TIMELY OBJECTIONS SHALL CONSTITUTE A WAIVER OF THOSE OBJECTIONS BOTH IN THE DISTRICT COURT AND ON LATER APPEAL TO THE UNITED STATES COURT OF APPEALS. *See Thomas v. Arn*, 474 U.S. 140, 154-55 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *F.D.I.C. v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995).

Dated: Central Islip, New York
      January 26, 2023

**SO ORDERED**:

/s/ Lee G. Dunst
LEE G. DUNST
United States Magistrate Judge

15